IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTERO RESOURCES CORPORATION, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 15-cv-____ |
| C&R DOWNHOLE DRILLING, INC., C&R DOWNHOLE DRILLING, LLC, BLACK DIAMOND HOT SHOT, LLC, STRC OILFIELD TECHNOLOGY, LLC, BIG TEX WELL SERVICES, LLC, AND TOMMY ROBERTSON, Individually, | § § § § § § § § | |
| Defendants. | § § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### I.   NEED FOR ACTION

Plaintiff Antero Resources Corporation ("Antero") seeks to recover damages and an accounting related to the defendants' overbilling of oilfield services. Throughout the course of the parties' relationships, the defendants deliberately and systemically billed Antero—and Antero paid—for work and services that were either never provided, or provided at an exaggerated price. Suspecting that the defendants were overbilling it, Antero exercised its undisputed contractual rights and requested an audit of the defendants' books and records. The defendants refused, despite their duty to give Antero "access at any time during normal working hours to [their] books and records." To date, the defendants have not provided Antero with a single document, and nothing suggests that they will be more forthcoming in the future. Antero seeks the protection of this Court to recover damages for the defendants' overbillings and order the defendants to comply with their undisputed duties under the contracts.

## II.     PARTIES[1]

1.      Antero Resources Corporation ("Antero") is a corporation formed under the laws of Delaware. Antero maintains its principal place of business in Denver, Colorado.

2.      Defendant C&R Downhole Drilling, Inc. ("C&R Downhole Inc.") was a corporation that, upon information and belief, was formed under the laws of Texas. C&R Downhole Inc. maintained its principal place of business in Weatherford, Texas.

3.      Defendant C&R Downhole Drilling LLC ("C&R Downhole LLC") is a Texas limited liability company with its principal place of business in Weatherford, Texas. None of C&R Downhole LLC's members or partners have, or are comprised of individuals or entities with, Delaware or Colorado citizenship.

4.      Defendant Black Diamond Hot Shot, LLC ("Black Diamond") is a Texas limited liability company with its principal place of business in Weatherford, Texas. None of Black Diamond's members or partners have, or are comprised of individuals or entities with, Delaware or Colorado citizenship.

5.      Defendant STRC Oilfield Technology, LLC ("STRC") is a Texas limited liability company with its principal place of business in Weatherford, Texas. None of STRC's members or partners have, or are comprised of individuals or entities with, Delaware or Colorado citizenship.

6.      Defendant Big Tex Well Services, LLC ("Big Tex") is a Texas limited liability company with its principal place of business in Weatherford, Texas. None of Big Tex's members or partners have, or are comprised of individuals or entities with, Delaware or Colorado citizenship.

7.      Defendant Tommy Robertson is an individual who, upon information and belief, is a citizen and resident of Texas.

---

[1] This complaint refers to C&R Downhole Drilling, Inc., C&R Downhole Drilling LLC, Black Diamond Hot Shot LLC, STRC Oilfield Technology, LLC, Big Tex Well Services, LLC, and Tommy Robertson collectively as "the defendants."

### III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of costs and interest. 28 U.S.C. § 1332(a).

9. Venue is proper in the Northern District of Texas under 28 U.S.C. § 1391(b)(1), because one or all of the defendants reside in the district, and all the defendants are residents of Texas. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events described herein occurred within the district.

10. This Court may exercise personal jurisdiction over the defendants because they are residents of Texas and/or because the defendants' conduct giving rise to the claims occurred in Texas.

### IV. FACTUAL ALLEGATIONS

**A. Background and the Master Services Agreement**

11. Antero is an exploration and production company engaged in the development of natural gas, natural gas liquids, and oil in the Appalachia Basin. Antero holds, and operates on, over 418,000 net acres in the Marcellus Shale and over 147,000 net acres in the Utica Shale. Antero contracted with the Corporate Defendants to provide services for its operations in the Appalachia Basin.

12. Antero and each of the Corporate Defendants entered into a Master Services Agreement ("MSA"), which governed the terms of their relationship.

13. Under the MSAs, the Corporate Defendants performed "Work" for Antero. The MSAs defined "Work" as "all services, labor, equipment, supplies, tools, manufactured articles, materials, facilities, and/or goods (in whole and/or in part) to be provided by [the Corporate

Defendants] to [Antero] pursuant to this [MSA] and/or any Order."[2] (MSA § 1.19.) The Corporate Defendants must perform Work to the highest industry standards; in a timely manner; using only the best tools, machinery, and equipment; and using experienced and fully trained employees. (MSA § 3.1.)

14. Antero was only obligated to pay the Corporate Defendants for Work that was actually and satisfactorily performed. (MSA § 10.1.) Payment was to be made at the rates and/or prices that Antero and the Corporate Defendants agreed to in work-request orders or in accordance with the Corporate Defendants' published schedule of rates and/or prices after consideration of any applicable discounts or credits.

15. The MSAs also give Antero broad audit rights, including the right to inspect and audit the Corporate Defendants' books and records, as well as those of the Corporate Defendants' contractors and subcontractors. (MSA § 9.) The MSAs specifically obligate the Corporate Defendants to "retain and maintain all books and records (*i.e.*, payroll records, accounting records, invoices, time reports, travel/entertainment expense reports, and all other documentation) in any way related to Work and/or this Agreement." (MSA § 9.)

16. The MSAs also provide that "[r]epresentatives and auditors of [Antero] shall have access at any time during normal working hours to the books and records maintained by [the Corporate Defendants] relating to this [MSA] and any of the Work, and shall have the right to copy and audit such books and records." (MSA § 9.)

---

[2] The MSA defined "Order" as "any and all requests for Work (whether written or oral) to be performed by [C&R Downhole] under this [MSA], whether resulting from a request by [Antero] and/or a description of Work by [C&R Downhole]." (MSA § 1.15.)

**B.    The Overbilling of Work and Services**

17.    Over the course of Antero's relationships with the Corporate Defendants, and while the MSAs were in effect, Antero suspected (and later confirmed) that the Corporate Defendants were systematically and deliberately overbilling Antero for Work and services that the Corporate Defendants provided—and in some cases, never provided.

18.    For example, the Corporate Defendants regularly overbilled for supervisory personnel. The Corporate Defendants stated that one supervisor, Angel Martinez, worked eight straight days at 24 hours per day. Mr. Martinez could not have possibly worked 192 straight hours. The Corporate Defendants' invoices also falsely stated that Mr. Martinez worked at multiple job sites at the same time, which was impossible given the location of the job sites. Yet, the Corporate Defendants invoiced Antero for such work. Antero's records are replete with examples of the Corporate Defendants overbilling for supervisors.

19.    The Corporate Defendants knowingly and deliberately included the exaggerated charges for supervisors and other services in their invoices in order to overbill Antero.

20.    Moreover, the invoices that the Corporate Defendants sent to Antero regularly contained unexplained charges that were not related to any Work or services that the Corporate Defendants actually provided. The Corporate Defendants regularly included mysterious charges for fuel, travel time, and "Environmental," a term that they never defined, in their invoices. On information and belief, the Corporate Defendants did not perform Work or services associated with these billings. Nevertheless, the Corporate Defendants knowingly and deliberately represented to Antero that they had done Work.

21.    Antero justifiably relied upon the false statements in the invoices by paying them.

22. Moreover, Tommy Robertson, who controlled operations for the Corporate Defendants, was responsible in part for the Corporate Defendants' overbilling and fraudulent conduct. In many cases, he personally engaged in fraudulent conduct.

23. At one point, Antero questioned Robertson about the high cost of fuel and transportation costs that the Corporate Defendants were invoicing to Antero for transporting light towers. The Corporate Defendants transported light towers using pickups (which were only capable of hauling a single light tower) rather than semi-trailer trucks (which can haul multiple light towers and thus reduce transportation costs). Robertson represented that winter road conditions forced the Corporate Defendants to use pickups. This statement was false. The road conditions did not prevent the Corporate Defendants from using semi-trucks. Antero later learned that semi-trucks hauled large drilling equipment on the same roads and in the same conditions that Robertson had stated was impossible.

24. The real reason that Robertson declined to use semi-trucks was that pickups allowed the Corporate Defendants to reap greater profits. The pickups used more fuel and required more drivers than the semi-trucks, resulting in higher transportation costs per light tower. The Corporate Defendants invoiced those costs—after including a profit markup—to Antero.

25. Robertson knew that the Corporate Defendants were misrepresenting the nature and scope of their work in the invoices—both for the light towers and for other overcharges—yet he never notified Antero about the false and/or fraudulent charges. The overbillings continued with his knowledge and either explicit or implicit approval.

26. Antero relied on Robertson's false statements when it paid the invoices for the inflated fuel and transportation costs as well as the other overbillings. But for Robertson's statements, Antero would not have paid for the Work and services, or would have paid less.

27. Robertson further perpetuated the Corporate Defendants' scheme to overbill Antero by firing an employee who disclosed the overbilling. The employee informed Antero that the Corporate Defendants were overbilling for supervisors and other work. When Robertson learned that the employee disclosed the Corporate Defendants' overbilling and false statements, he immediately terminated the employee.

C. **The Requested Audit and the Defendants' Refusal**

28. Beginning in summer 2015, Antero properly requested and attempted to conduct an audit of the Corporate Defendants' performance under the MSAs. After the initial audit request, Tommy Robertson, on behalf of the Corporate Defendants, told Antero that they refused to participate in the audit.

29. In response, Antero sent letters via FedEx to the Corporate Defendants (addressed to Tommy Robertson) again exercising its audit rights under the MSAs. These letters quoted the MSAs' audit provisions, which unequivocally provide Antero the right to access "all books and records . . . in any way related to Work and/or the [MSA]." (MSA § 9.) Despite this clear language, the Corporate Defendants, through Tommy Robertson, again denied Antero access to any of their books and records. The Corporate Defendants continue to refuse to provide any access to these documents. Antero seeks relief from this Court to exercise the audit rights that the MSAs unequivocally provide.

30. Despite the Corporate Defendants refusal to participate in the audit, Antero nevertheless went to great lengths to analyze whether the Corporate Defendants' overbilled it. Despite the Corporate Defendants' failure to produce documents necessary to perform a complete audit, Antero conducted a limited audit based on information within its possession. This audit revealed that, as a direct and proximate result of the Corporate Defendants' conduct, Antero has been overbilled and damaged in an amount substantially exceeding this Court's minimum jurisdictional requirements.

## V.  CONDITIONS PRECEDENT

31. All conditions precedent to Antero's claims for relief have been fulfilled or have been performed.

## VI.  CLAIMS FOR RELIEF

**Claim One – Breach of Contract**

32. Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

33. Antero and the Corporate Defendants entered into MSAs. All conditions precedent to Antero's claims under each MSA have been performed or have occurred.

34. The Corporate Defendants have breached their obligations under the MSAs. Their breaches include, but are not limited to:

    a. Charging Antero for Work or services that they never performed;

    b. Exaggerating the Work or services provided;

    c. Overbilling and/or exaggerating the prices for Work or services;

    d. Failing to maintain and/or produce books and records to Antero as required by the accounting and audit provisions of the MSAs;

    e. Refusing to provide access to books or records as required by the accounting and audit provisions of the MSAs;

    f. Failing to provide accurate information and/or failing to disclose information that the Corporate Defendants had a duty to disclose to Antero.

35. On the basis of these breaches, Antero has been damaged in an amount exceeding this Court's minimum jurisdictional requirements.

**Claim Two – Declaratory Judgment:**

36.     Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

37.     This dispute involves a justiciable controversy involving the rights and status of the parties. The controversy is real and substantial and involves a genuine conflict and is not merely a theoretical dispute.

38.     Antero seeks a declaration that 1) the Corporate Defendants have failed to comply with their contractual obligations to maintain and/or provide Antero with their books and records, 2) Antero is entitled to all books and records (as those terms are defined in the MSAs) in connection with its requested audits under the MSAs, 3) the Corporate Defendants overbilled Antero for work and services in violation of the MSAs, and 4) the Corporate Defendants must comply with their contractual obligations under the MSAs.

**Claim Three – Unjust Enrichment**

39.     Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

40.     As a result of their wrongful and fraudulent conduct, the Corporate Defendants billed and were paid for Work and services that they did not provide. The defendants obtained monies that rightfully belong to Antero. It would be inequitable and unjust for the defendants to retain these wrongfully obtained monies.

41.     Antero is entitled to restitution and seeks an order establishing the defendants as constructive trustees of the monies unjustly obtained, plus interest.

**Claim Four – Fraud**

42.     Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

9

43. Throughout the course of the parties' relationship, the Corporate Defendants have provided invoices, bills, and statements to Antero. These documents purport to reflect accurately the Work and services that the Corporate Defendants provided to Antero. However, the Corporate Defendants' invoices, bills, and statements and other documents and representations contain false and misleading information, including overbilling for supervisory work. The Corporate Defendants and Tommy Robertson made these and other representations knowing that they were false, intending for Antero to rely on them.

44. Moreover, the Corporate Defendants and Tommy Robertson have knowingly withheld documentation in their possession that would show that Antero was overbilled for work and services. By withholding such documentation, the Corporate Defendants and Tommy Robertson perpetuated the fraud. This constitutes a fraudulent and material omission.

45. The Corporate Defendants and Tommy Robertson further perpetuated their fraud by terminating the employee who informed Antero about some of the overbillings.

46. Antero relied on the defendants' fraudulent statements and omissions. But for the fraudulent conduct, Antero would not have paid for the overbilled work and services, or would have paid less. As a result of its reliance on the defendants' fraudulent conduct, Antero has suffered damages.

**Count Five – Negligent Misrepresentation and Negligence**

47. Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

48. The defendants owe Antero an independent tort duty to bill their work and services accurately, truthfully, and refraining from supplying false or misleading information. The defendants also owe Antero a duty to maintain or produce documents or otherwise account for their overbilling of Work and services. The defendants failed to exercise reasonable care in performing these duties.

Instead, the defendants acted with knowledge of the high degree of risk that their actions would result in injury to Antero, conscious indifference to Antero's rights, and actual malice.

49. The defendants' representations that the invoices to Antero were accurate were false. The defendants either failed to investigate the original representations or agreed to conceal their knowledge regarding their accuracy. The defendants therefore did not exercise reasonable care or competence in obtaining or communicating the information to Antero.

50. These allegations assert that the defendants violated an independent tort duty of ordinary care that arises outside of the contracts. Their actions amount to more than a mere failure to comply with the MSAs.

51. As a result of the defendants' negligent representations and/or negligence, Antero has been damaged in excess of this Court's minimum jurisdictional limits.

**Count Six – Accounting**

52. Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

53. At all relevant times, Antero had a contractual relationship with the Corporate Defendants.

54. As a result of the Corporate Defendants' overbilling and other conduct described herein, Antero paid monies to the Corporate Defendants that rightfully belong to Antero.

55. The amount of money that the Corporate Defendants owe Antero cannot be ascertained without an accounting of the receipts from the aforementioned transactions.

56. This claim for an accounting is a suit in equity. An accounting is properly alleged as a cause of action and is necessary here because the facts and accounts at issue are so complex that adequate relief cannot be obtained at law. Standard discovery procedures will not provide adequate relief because of the case's complexity. The Corporate Defendants billed Antero for hundreds of

millions of dollars of work and services and there are thousands of transactions to parse. And, on information and belief, many of the documents relevant to the case are outside this Court's subpoena power or are impracticable to obtain through standard discovery procedures.

57. In the alternative, Antero seeks an accounting as a remedy in conjunction with its other causes of action.

**Count Seven – Conversion**

58. Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

59. By overbilling Antero, the Corporate Defendants substantially interfered with monies that Antero lawfully had the right to possess. They interfered with such possession by falsely and fraudulently representing that they had performed Work and services for Antero that they had never performed. But for the defendants' false representations, Antero would not have paid for the overbilled Work and services. Antero has demanded that the defendants return possession and control of the monies; the defendants have refused. As a result, Antero has suffered damages in excess of this Court's minimum jurisdictional limits

**Count Eight – Attorney's Fees**

60. Antero incorporates by reference the foregoing paragraphs as though fully set forth herein.

61. As a result of the defendants' actions and the need to protect its interests, Antero has retained lawyers to represent it in this action. Antero has agreed to pay them a reasonable fee for their services.

62. Pursuant to § 13.11 of the MSAs, the defendants are responsible for Antero's attorney's fees. The MSA requires the Corporate Defendants to indemnify Antero for any "expense

of any kind or character" that "arises out of or result[s] from [the Corporate Defendants'] failure to comply with" the MSAs.

63. Antero is also entitled to attorney's fees because the defendants have acted in bad faith, wantonly, or for oppressive reasons.

## VII. Discovery Rule

64. Antero asserts that any applicable statutes of limitations should be tolled with respect to Antero's claims because the defendants deliberately withheld information from Antero that was in their exclusive possession, custody, or control, which would have allowed Antero to discover the their breaches, fraud, and negligence. Under the MSAs and at common law, the defendants had an obligation to provide Antero with information to conduct the audit. The defendants refused, which enabled them to perpetuate the fraud and breaches of the MSAs and other misconduct.

## VIII. Punitive Damages

65. Antero seeks exemplary and punitive damages on the basis that the defendants acted with actual malice and fraudulently toward Antero.

## IX. Jury Demand

66. Antero demands a jury trial.

## X. Prayer for Relief

67. Antero respectfully prays:

    a. That the defendants be cited to appear and answer herein;

    b. That the Court enter judgment and award:

        i. Actual damages

        ii. Pre-judgment and post judgment interest at the maximum legal rate;

        iii. Costs of court

        iv. Declaratory judgment as requested above;

  v.  An accounting;

  vi.  An award of punitive damages;

  vii.  Attorney's fees;

  viii.  All such other relief, both general and special, at law or in equity, to which Antero may show itself justly entitled.

Dated: December 7, 2015

            Respectfully submitted,

            /s/ Daniel H. Charest

            Daniel H. Charest
            State Bar No. 24057803
            Will Thompson
            State Bar No. 24094981
            BURNS CHAREST LLP
            500 North Akard Street, Suite 2810
            Dallas, Texas 75201
            Telephone: (469) 904-4550
            Facsimile: (469) 444-5002
            dcharest@burnscharest.com
            wthompson@burnscharest.com

            Attorneys for the plaintiff